792 So.2d 85 (2001)
Mary M. BAHAM
v.
MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS
No. 2000-CA-2022.
Court of Appeal of Louisiana, Fourth Circuit.
July 11, 2001.
Rehearing Denied September 6, 2001.
*86 Brigette M. Piattoly, Piattoly Law Firm, New Orleans, Counsel for Plaintiff/Appellant.
Richard P. Ieyoub, Attorney General, John S. "Chip" Coulter, Assistant Attorney General, Louisiana Department of Justice, Division of Risk Litigation, Baton Rouge, Counsel for Defendant/Appellee.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER, Judge JAMES F. MCKAY III.
BYRNES, Chief Judge.
Plaintiff-appellant, Mary M. Baham's claim against defendants-appellees, Dr. Christopher Babycos, Dr. Scott McDonald, and the Medical Center of Louisiana at New Orleans ("MCLANO"), for medical battery and malpractice arising out of negligence and lack of informed consent was dismissed by the trial court pursuant to an exception of prescription. We reverse and remand.
Ms. Baham requested that Dr. Christopher Babycos perform certain cosmetic surgery. She alleges that she requested Dr. Babycos to remove the fatty tissue under her chin and shorten the soft tissue on the tip of her nose. She further alleges that Dr. Babycos recommended that she additionally allow the placement of a small implant which would make her chin stand out more, a procedure that she was assured was a simple one. She also alleges that she rejected recommendations for more serious surgical procedures. The consent form said only: "Fix the nose and chin, Possible chin implant." No other details of the procedures to be employed in the consent form was standard boilerplate language.
On October 8, 1993, the surgery was performed by Dr. Babycos under the supervision of Dr. Scott McDonald at MCLANO.
Allegedly, the day after the surgery Ms. Baham discovered that Drs. Babycos and McDonald did not remove the fatty tissue from under her chin and did not place a chin implant as she had expected. Instead, they broke Ms. Baham's jaw on both sides, pulled her chin out, and reconnected her jaws with plates and screws, a procedure which Ms. Baham describes in her petition as "unauthorized sliding genioplasty."
*87 On October 5, 1994, plaintiff filed suit against MCLANO, Dr. Babycos, and Dr. McDonald in Civil District Court. The main thrust of plaintiffs original petition was a claim for the intentional tort of medical battery based on lack of consent. However, the petition also contained allegations of negligence. For example, Paragraph IX of plaintiffs petition alleged that:
As a consequence of the sliding genioplasty and the manner in which it was performed, the plates inserted in petitioner's chin caused injury to her.
[Emphasis added.]
Paragraph X(c) and (d) of plaintiff's petition provide that:
(c) Failure to insert the metal plates in such a manner so as to cause neurological and muscular damage to petitioner; and
(d) Any and all other acts of negligence and breach of the applicable standard of care as will be shown upon the presentation of the evidence in this matter.
Also on October 5, 1994, within a year of the original surgery, plaintiff filed a claim with the Patients' Compensation Fund (PCF) for medical malpractice against MCLANO, Dr. Babycos, and Dr. McDonald, which was received by the PCF on October 7, 1994.
Annexed to plaintiffs opposition to the exception of prescription are letters from the Patient's Compensation Fund dated October 18, 1994, indicating that Drs. McDonald and Babycos are qualified health care providers, but that MCLANO is not.
On March 22, 1995, while the filing with the PCF was still pending, plaintiff filed a claim of medical malpractice against the defendants with the Division of Administration requesting a state medical review panel, there being some question as to whether the doctors were covered by the state.
On August 2, 1995, the trial judge dismissed the plaintiffs Civil District Court suit pursuant to the defendants' exception of prematurity. On appeal this Court held that:
Plaintiffs intentional tort of medical battery action was correctly filed in the district court and need not be submitted to a malpractice panel. Accordingly, the trial court correctly dismissed without prejudice the medical malpractice action as premature, but should not have dismissed the intentional tort medical battery action. [Emphasis added.]
Baham v. Medical Center of Louisiana at New Orleans, 95-2605 (La.App. 4 Cir. 5/8/96), 674 So.2d 458, 461. Therefore, this Court sustained the exception of prematurity as to the negligence claim, but remanded the case back to the trial court on the intentional tort medical battery action.
However, in the year following this Court's decision in Baham, the Louisiana Supreme Court stated emphatically that there is no cause of action for medical battery based on lack of consent:
We therefore reject battery-based liability in lack of informed consent cases (which include no-consent cases) in favor of liability based on breach of the doctor's duty to provide the patient with material information concerning the medical procedure.
Lugenbuhl v. Dowling, 96-1575, p. 9 (La.10/10/97), 701 So.2d 447, 453.
According to Lugenbuhl, lack of informed consent cases and no consent cases all sound in medical malpractice. Therefore, this Court's opinion in Baham on the question of medical battery for lack of consent has been tacitly overruled by Lugenbuhl. Accord: In re Medical Review *88 Panel For Claim of Larche, 97-2397 (La. App. 4 Cir.4/15/98), 714 So.2d 56.
A premature medical malpractice suit does not interrupt or suspend prescription. LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226[1]. Pursuant to the Supreme Court's reasoning in LeBreton the plaintiff may not rely on the original, October 5, 1994 premature filing of her suit in Civil District Court to either suspend or interrupt prescription.
Moreover, the trial court judgment cited Burdeaux v. Cline, 626 So.2d 1205 (La. App. 2 Cir.1993), in support of the proposition that the timely filing of a medical malpractice claim with the wrong state agency does not suspend the running of prescription. In other words, it was the opinion of the court below that the filing with the PCF did not suspend prescription because the filing should have been made with the Division of Administration. Burdeaux cites no authority in support of this proposition and this court is aware of none in existence at the time Burdeaux was decided in 1993.
At the time that plaintiff filed her claim with the Patient Compensation Fund in October of 1994 within a year of the original surgery, LSA-R.S. 40:1299.47A(2)(a) provided that the filing suspended prescription as to all solidary obligors until 90 days after the notification to the claimant or his attorney of the decision of the medical review panel or until 60 days after the notification to the claimant or his attorney that the health care provider is not covered by the provisions relating to the medical review panel. The plaintiff notes that Act 664 of 1997, effective August 15, 1997, added the following sentence to LSA-R.S. 40:1299.47A(2)(a):
Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription.
This sentence added to LSA-R.S. 40:1299.47A(2)(a) in 1997 was obviously not in effect at the time plaintiff filed with the Patient's Compensation Fund in October of 1994, nor at the time the plaintiff filed with the Division of Administration on March 22, 1995. The same sentence as was added by Act 664 of 1997 to LSA-R.S. 40:1299.47A(2)(a) was at the same time added to LSA-R.S. 40:1299.39.1A(2)(a) dealing with the suspension of prescription in connection with requests for a state medical review panel.
We do not see how this amendment has any relevance to the particular facts of this case, because, as already pointed out, Act 664 of 1997 was not in effect at the time of the filing with either the PCF or the Division of Administration. The defendants do not rely on this amendment in support of any of their arguments.
We find that the timely filing by the plaintiff with the Patient Compensation Fund suspended prescription. The defendants do not contest the timeliness of this filing. Instead, the defendants, citing LSA-C.C. art. 3463, contend that the suspension resulting from the timely filing with the Patient's Compensation Fund is considered never to have occurred because it was voluntarily dismissed by the plaintiff on April 8, 1996 when Ms. Baham signed an agreement to dismiss the PCF proceedings and transfer the entire matter to the state panel which had already been *89 invoked by the plaintiff on in March of 1995.
LSA-C.C. art. 3463 provides that:
An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending. Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at trial. [Emphasis added.]
Plaintiff relies on Niklaus v. Bellina, 96-2411 (La.App.5/21/97), 696 So.2d 120, in support of her argument that the failure of the defendants to object to the medical review proceeding constituted an acknowledgement of her claim sufficient to interrupt prescription under LSA-C.C. art. 3464. In fact, the defendants not only did not object to the transfer, it appears that they actively sought and facilitated it. In Niklaus this Court suggested that the failure of the defendant to object to the proceedings constituted a waiver of prescription.
We do not believe that we should follow Niklaus in this regard for several reasons. First, the prescriptive issue in Niklaus was dicta, because this Court ultimately found the defendant doctor to be free from fault. Second, Niklaus was decided by this Court prior to the Supreme Court's decisions in Lugenbuhl and LeBreton. Niklaus cites to this Court's decision in Baham v. Medical Center of Louisiana at New Orleans, 95-2605 (La.App. 4 Cir. 5/8/96), 674 So.2d 458, regarding the issue of lack of consent medical battery, but Baham was emphatically, albeit tacitly, overruled by Lugenbuhl on this issue. Moreover, the Supreme Court in LeBreton signaled a much stricter view of the special prescriptive statutes in medical malpractice cases. Third, in Niklaus the plaintiff did not file the exception of prescription until the case reached the appellate level and we find that the analogy drawn by this Court in Niklaus to the debtor who lulls the creditor into believing that he will not contest liability is not the proper analogy.
The concept of interrupting prescription arises out of LSA-C.C. art. 3464 which states that:
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.
The "right" referred to here is not the procedural right to assert a claim, but the substantive merit of the claim. Therefore, the failure of the defendants to object immediately to a legal procedure employed by the plaintiff does not constitute an acknowledgement of a claim under LSA-C.C. art. 3464. In spite of the failure of the defendants' arguable encouragement of plaintiff's proceedings before the Division of Administration, at no time did the defendants do anything to indicate that there was any substantive merit to plaintiff's claim.
The proper analogy is to LSA-C.C.P. art. 2162. LSA-C.C.P. art. 2162 allows the appellate court to consider a plea of prescription filed for the first time at the appellate level. Where the contention in Niklaus that the failure to object to legal proceedings is tantamount to an acknowledgement of prescription collides with the principle set forth in LSA-C.C.P. art. 2162 that the defendant does not waive a plea of prescription by failing to raise it in the trial court the statutory implications favoring non-waiver found in LSA-C.C.P. art. 2162 are more persuasive. Although the defendant in Niklaus did not file the exception *90 of prescription until the case reached this Court, this Court failed to discuss the implications of LSA-C.C.P. art. 2162 in reaching its decision in that case.
LSA-C.C. art. 3462 and 3463 provide that prescription is interrupted by the filing of suit and service of process within the prescriptive period and continues as long as the suit is pending[2]. Therefore, where the second suit is filed prior to the dismissal of the first, the subsequent dismissal of the first suit does not defeat the interruption or suspension of prescription provided by the first filing:
A second suit which was filed after the original suit was dismissed or abandoned is considered as never having been filed and prescription is applicable. To the contrary, a second suit filed before the original suit was abandoned or dismissed interrupts prescription. Prescription does not accrue because the second suit interrupts prescription. Tug Alamo Inc. v. Electronic Service Inc., 275 So.2d 419 (La.App. 4th Cir.1973). If the second suit is filed prior to abandonment of the first suit, the interruption provided by the first suit continues until the second suit is filed and interruption continues after the suit is dismissed because the second suit is pending. Levy v. Stelly, 277 So.2d 194 (La.App. 4th Cir. 1973), writ denied, 279 So.2d 203 (La. 1973). [Emphasis added.]
Pfiffner v. Correa, 91-2734, p. 6 (La.App. 4 Cir.1/13/94), 640 So.2d 281, 285, reversed on other grounds, 94-0924 (La.10/17/94), 643 So.2d 1228.
Likewise in Succession of Tompkins, 32,405, p. 4 (La.App. 2 Cir.12/8/99), 747 So.2d 1251, 1254, the court considered the effect of LSA-C.C.P. art. 3462 and 3463 and concluded that:
[I]nterruption of prescription continues if the original suit is still pending or viable when the second action or intervention is filed. Martin v. Franklin State Bank & Trust Co., 595 So.2d 371 (La.App. 2d Cir.1992), writs denied, 596 So.2d 213 (La.1992) and [5]97 So.2d 1036 (La.1992); Kelly v. Templet, 428 So.2d 817 (La.App. 1st Cir.1982), writ denied, 433 So.2d 152 (La.1983).
Succession of Tompkins went on to provide an excellent explanation of the policy considerations underlying the concept of prescription:
Liberative prescription statutes, intended to protect defendants from prejudice in preparing and conducting defenses, are strictly construed against prescription and in favor of the obligation sought to be extinguished by it. Bouterie v. Crane, 616 So.2d 657 (La.1993); Parker v. Southern American Ins. Co., 590 So.2d 55 (La.1991).
"The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and the loss or non-preservation of relevant proof." Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268.

*91 When a defendant knows or should know, prior to the expiration of the prescriptive period, that legal demands are made upon him from the occurrence described in the petition filed, prescription is interrupted. Nini v. Sanford Bros., Inc., 276 So.2d 262 (La.1973). "[T]he essence of interruption of prescription by suit has been notice[3] to the defendant of the legal proceedings based on the claim involved." Id. [Emphasis added.]
In the instant case, all defendants had notice of legal proceedings brought against them by the plaintiff through commencement of legal proceedings with the PCF and in Civil District Court, although the latter filing was admittedly premature. Under the circumstances, any reasonable defendant would take steps to preserve relevant evidence. Applying the doctrine of the suspension of prescription to preserve plaintiff's claim in this case causes no prejudice to the defendants. Therefore, this Court can find no equitable or legal reason to sustain the dismissal of the plaintiff's claim on the grounds of prescription.
LSA-C.C. art. 3462 and 3463 refer to the interruption of prescription and this Court is aware that LeBreton, Supra, explained that LSA-R.S. 40:1299.47A(2)(a) provides for the suspension of prescription and not its interruption. LeBreton explains the difference between interruption and suspension of prescription as follows:
Because prescription adversely affects creditors, prescription may be suspended in favor of creditors who cannot enforce their claims. Suspension of prescription constitutes a temporary halt to its running. One doctrinal source aptly describes suspension as a period of time in which prescription slumbers. G. Baudier-Lacantinerie & A. Tissier, supra, No. 415, at 221-22. Prescription is suspended for as long as the cause of suspension continues. After the cause for the suspension ends, the prescriptive time begins running and the "time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the period of the suspension is deducted." Id. At the root of the principle of suspension is the recognition that a creditor should not lose his legal claim during a period when enforcement of the claim is prevented. Id., Nos. 368, 389, at 193, 207-08.
In contrast to suspension, interruption not only stops the running of prescription, it "annuls the commenced prescription so that after the interruption ceases, a new prescription must commence." Id., No. 415, at 221. Furthermore, unlike suspension which requires no act by the creditor, interruption results from an act by a creditor or a debtor's renunciation. La. Civ.Code arts. 3462-66.
Id., p. 6, 714 So.2d at 1229.
Thus, "interruption" causes prescription to start over when the cause of the interruption ceases, whereas "suspension" causes prescription to pick up where it left off when the cause of the suspension ceases. However, we conclude that regardless of whether the filing of proceedings suspends or interrupts prescription, the principles expressed in Pfiffner and Succession of Tompkins, supra, are equally applicable and the cause of action is preserved where a second proceeding is filed prior to the dismissal of the first, as it was in the instant case.
*92 The premature suit did not interrupt prescription, but the timely filing with the Patient's Compensation Fund did suspend prescription. Semien v. Pinac, 98-1350 (La.App. 3 Cir. 7/7/99), 745 So.2d 632:
Prescription as to one solidary obligor is suspended by the filing of a medical review claim against any other solidary obligor. LSA-R.S. 40:1299.39.1A(2)(a); Graham v. St. Charles General Hospital, 590 So.2d 818 (La.App. 4th Cir.1991). As long as the 1984 suit was pending against one [91-2734 La.App. 4 Cir. [p] 6] solidarily liable defendant, prescription was interrupted as to the other solidary obligors.
Pfiffner, p. 5-6, 640 So.2d at 285.
Therefore, the filing with the PCF suspended prescription even as to the MCLANO regardless of whether the PCF was the proper agency for proceeding against MCLANO because of MCLANO's solidary liability with the individual defendants. LSA-R.S. 40:1299.39.1A(2)(a)[4] employs the same language as that found in LSA-R.S. 40:1299.47.A(2)(a)[5] to equally suspend prescription as to solidary obligors. (The defendants did not question the potential solidary liability of MCLANO with the individual defendants in their appellate brief). The subsequent filing with the Division of Administration occurred while the Patient's Compensation Fund proceeding was still pending and, therefore, was also timely and served to maintain the suspension of prescription against all solidarily liable parties. Therefore, assuming that the filing with the Division of Administration was timely, as we have already found it to be, the defendants raise no objections to the timeliness of plaintiff's August 24, 1998 amendment to her petition in the original Civil District Court suit following the July 16, 1998 notification to plaintiff of the adverse decision of the state medical malpractice panel.[6] The defendants' arguments were limited to: (1) The premature filing of a malpractice suit does not interrupt prescription; (2) the suspension of prescription which occurred when the plaintiff filed the PCF proceedings is considered never to have occurred as a result of the plaintiff's voluntary dismissal of those proceedings; and (3) as neither the original suit nor the timely filing with the PCF have any affect on prescription pursuant to arguments "(1)" and "(2)" above, the filing with the Division of Administration over a year after plaintiff's original surgery was too late. Although we agree with the defendants as to argument "(1)", it is sufficient for the plaintiff to prevail that we find no merit in defendant's argument "(2)" (because the Division of Administration proceeding was pending when the dismissal occurred) in order for us to further find against the defendants on argument "(3)."
For the foregoing reasons, the judgment of the trial court dismissing plaintiff's claim as having prescribed is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
NOTES
[1] The Supreme Court in LeBreton specifically rejected Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3 Cir.1985) which had held otherwise.
[2] The Supreme Court espouses a very liberal view of what is a "pending" case. Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La. 1986). This view is more than liberal enough to define as "pending" plaintiff's proceedings before both the PCF and the Division of Administration until such time as the PCF proceeding was dismissed and the Division of Administration proceeding was concluded. In Hebert the Supreme Court held that the case was still "pending" as no judgment of dismissal had been signed, in spite of the fact that the suit had been settled.
[3] Emphasis on "notice" original.
[4] "State Medical Review Panel"
[5] "Medical review panel"
[6] See LSA-R.S. 40:1299.39.1A(2)(a).