714 So.2d 1226 (1998)
Diana LeBRETON
v.
Felix O. RABITO, M.D., Patrick C. Breaux, M.D. and Thomas A. Krefft, M.D.
No. 97-CC-2221.
Supreme Court of Louisiana.
July 8, 1998.
Edward J. Rice, Arthur F. Hickham, Jr., Adams & Reese, New Orleans, for Applicant.
Eugene P. Redmann, Lloyd W. Hayes, Thomas Hayes & Buckley, New Orleans, for Respondent.
Deborah I. Schroeder, Metairie, for Amici Curiae Lammico.
Amy Waters Phillips, Baton Rouge, for Amici Curiae Louisiana State Medical Society.
KNOLL, Justice.[*]
The sole issue before us in this medical malpractice claim is whether the lower courts erred as matter of law in applying the general provision on interruption of prescription found in La.Civ.Code art. 3462 simultaneously with the specific provision on suspension of prescription contained in La.R.S. 40:2399.57(A)(2)(a) of the Louisiana Medical Malpractice Act to defeat the defendants' peremptory exception of prescription. The trial court, relying on Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3 Cir.1985), a case which approved the simultaneous application of interruption and suspension of prescription in the setting of medical malpractice, denied the defendants' peremptory exception of prescription *1227 and allowed plaintiff's action to continue. The Court of Appeal, Fourth Circuit, denied the defendants' writ application. We granted the defendants' writ application to consider the lower courts' pairing of interruption and suspension of prescription and the continued viability of Hernandez. Lebreton v. Rabito, 97-CC-2221 (La.11/26/97), 703 So.2d 652. We now overrule Hernandez and reverse the present case, finding that the specific statutory provision providing for the suspension of prescription in the context of medical malpractice should have been applied alone, not complementary to the more general codal article which addresses interruption of prescription.

FACTS
On August 13, 1991, Albert LeBreton, Jr. suffered a heart attack at his home and was taken to Pendleton Memorial Hospital. At the time of his arrival at the hospital, Mr. LeBreton was unconscious. Over the next few days of hospitalization, Drs. Felix Rabito, Patrick Breaux, and Thomas Krefft treated Mr. LeBreton. On August 18, 1991, after consultation with Mrs. LeBreton, Dr. Breaux ordered the cessation of all artificial life support, including mechanical respiration, antibiotic treatment, food, and hydration, from Mr. LeBreton. The plaintiff, Diana LeBreton, Mr. LeBreton's daughter, protested her mother's decision and asked the treating physicians to reinstate nourishment, hydration, and medication to her father.[2] The physicians refused the daughter's request. Subsequently, on August 20, 1991, Mr. LeBreton died.
On August 18, 1992, the plaintiff filed a wrongful death claim in Civil District Court, Orleans Parish, against Drs. Rabito, Breaux, and Krefft. Her wrongful death action alleged that the "deliberate act of euthanasia" by the defendants caused her father's death. Although plaintiff contended in her petition that her action did not fall under the Louisiana Medical Malpractice Act, since defendants acted intentionally, she also filed a request on August 19, 1992, for a review of the claim by a medical review panel with the Patient's Compensation Fund Oversight Board.
Drs. Rabito and Breaux interposed a dilatory exception of prematurity to the suit filed in Civil District Court. On July 20, 1993, the trial court granted the exception and dismissed plaintiff's suit without prejudice. Dr. Krefft also filed a dilatory exception of prematurity which was granted on August 26, 1993, dismissing plaintiff's suit against him without prejudice.
On August 12, 1996, the medical review panel issued its opinion, finding no medical malpractice on the part of Drs. Rabito, Breaux, and Krefft. On August 14, 1996, the medical review panel sent notification of its opinion to plaintiff's attorney. On February 3, 1997, approximately five months after plaintiff's attorney was notified of the panel's opinion, plaintiff filed suit for wrongful death in Civil District Court against Drs. Rabito, Breaux, and Krefft. Shortly thereafter, Drs. Rabito, Breaux, and Krefft filed peremptory exceptions of prescription, alleging that plaintiff's wrongful death claim was prescribed on its face.[3]
The trial court, relying on Hernandez, supra, overruled the doctors' peremptory exception of prescription. The appellate court denied the doctors' supervisory writ on the same ground.

OVERVIEW OF HERNANDEZ

In Hernandez, the plaintiff discovered the alleged act of medical malpractice on March 16, 1981, and suit was filed in the district court against the Lafayette Bone & Joint Clinic and three physicians on March 15, 1982. The following week on March 22, 1982, the plaintiff requested a medical review panel. On July 12, 1982, the trial court, acting on the defendant's dilatory exception of prematurity, dismissed the suit without prejudice.
The medical review panel acted on August 9, 1983, and notified plaintiff of its decision *1228 on August 12, 1983. Four months later, on December 16, 1983, the plaintiff filed a second suit against the defendants. After the defendants filed a peremptory exception of prescription to the second suit, the trial court found that the plaintiff's claim was prescribed. The Court of Appeal, Third Circuit, reversed.
The Third Circuit held that the plaintiff's filing of his law suit on March 15, 1982, interrupted prescription under La.Civ.Code art. 3462 which provides as follows:
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
It further held that under La.Civ.Code art. 3466 prescription effectively begins "to run anew from the last day of interruption." However, it determined that the one-year prescriptive period for medical malpractice claims did not begin to run anew because under La.R.S. 40:1299.47(A)(2)(a) prescription was suspended at the time plaintiff's suit was dismissed without prejudice. La.R.S. 40:1299.47(A)(2)(a) provides:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification... to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part,....
Furthermore, based upon La.Civ.Code art. 3472 "[t]he period of suspension is not counted toward accrual of prescription" and did not commence again until the period of suspension terminated. Accordingly, the Hernandez court reasoned, on the basis of La. Civ.Code art. 3466 and La.R.S. 40:1299.47(A)(2)(a), that the one-year prescriptive period was tolled until ninety days after the plaintiff's notification of the medical review panel's decision; not until that time had run did the one-year prescriptive period begin anew. Therefore, the appellate court concluded that the plaintiff's second suit was not prescribed because it had been filed within one-year following the termination of the suspension of prescription.

LIBERATIVE PRESCRIPTION
In their argument before us, Drs. Rabito, Breaux, and Krefft contend that instead of applying the general rules of prescription provided in the Civil Code, this case should have been resolved with the more specific rules enunciated in the Medical Malpractice Act. Simply stated, they urge that the lower courts should not have simultaneously applied the principles of interruption and suspension of prescription. We agree.
Liberative prescription is a mode of extinguishing a legal claim that has not been filed by a creditor during a time period stipulated by law. La.Civ.Code art. 3447; G. Baudier-Lacantinerie & A. Tissier, TRAITE THEORIQUE ET PRATIQUE DE DROIT CIVIL, No. 25 (4th ed.1924), reprinted in 5 CIVIL LAW TRANSLATIONS at 15 (La. St. Law Inst. Trans.1972). The basis for prescription may be said to rest on three major policies. First, it promotes social and legal stability. Id., supra, No. 27, at 16-17. Second, prescription is based partially on a presumption of payment. Id., supra, No. 32, at 21. Third, when prescription extinguishes a debt it is usually because of the negligence of the creditor.[4]
Prescription runs against all persons unless an exception is established by legislation. La.Civ.Code art. 3467. When a petition reveals on its face that prescription has run, the plaintiff bears the burden of establishing that the claim has not prescribed. Wimberly v. Gatch, 93-2361 *1229 (La.4/11/94), 635 So.2d 206. The three legislative principles on which plaintiff can rely to meet that burden are suspension, interruption, and renunciation. Id.
Because prescription adversely affects creditors, prescription may be suspended in favor of creditors who cannot enforce their claims. Suspension of prescription constitutes a temporary halt to its running. One doctrinal source aptly describes suspension as a period of time in which prescription slumbers. G. Baudier-Lacantinerie & A. Tissier, supra, No. 415, at 221-22. Prescription is suspended for as long as the cause of suspension continues. After the cause for the suspension ends, the prescriptive time begins running and the "time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the period of the suspension is deducted." Id. At the root of the principle of suspension is the recognition that a creditor should not lose his legal claim during a period when enforcement of the claim is prevented. Id., Nos. 368, 389, at 193, 207-08.
In contrast to suspension, interruption not only stops the running of prescription, it "annuls the commenced prescription so that after the interruption ceases, a new prescription must commence." Id., No. 415, at 221. Furthermore, unlike suspension which requires no act by the creditor, interruption results from an act by a creditor or a debtor's renunciation. La.Civ.Code arts. 3462-66.
In the case sub judice, it is clear that the one-year prescriptive period found in La.Civ. Code art. 3492 governs plaintiff's wrongful death action against Drs. Rabito, Breaux, and Krefft. La.Civ.Code art. 3492; Taylor v. Giddens, 618 So.2d 834 (La.1993). Accordingly, the prescriptive period in the case before us commenced on August 20, 1991, the date of Mr. LeBreton's death.[5] It is likewise clear that plaintiff's initial filing of her law suit in district court on August 18, 1992, and her filing of the request for a medical review panel on August 19, 1992, were both filed within the one-year prescriptive period. As stated earlier, plaintiff's law suit in district court was dismissed without prejudice on July 20, 1993, after the defendants raised the dilatory exception of prematurity. Although the medical review panel notified plaintiff's attorney on August 14, 1996, of its decision, the plaintiff did not re-file her law suit until February 3, 1997, well beyond the ninety-day suspensive period provided by La.R.S. 40:1299.47(A)(2)(a). The lower courts, after considering these facts, found that because of interruption caused by the filing of the plaintiff's law suit as provided by La.Civ.Code art. 3462 and its later dismissal without prejudice, plaintiff had one-year after the expiration of the suspensive period spelled out in La.R.S. 40:1299.47(A)(2)(a) within which to file suit.[6]
Rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978); Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977).
Actions for medical malpractice against certain health care providers, such as the defendants herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La.R.S. 40:1299.41, et seq. and La.R.S. 9:5628, which delineate the liberative prescription applicable to actions for medical malpractice under Title 40. It specifically provides, inter alia, that the filing of a medical malpractice claim with the board only suspends the time within which suit must be instituted in a *1230 district court. On the other hand, if the general codal articles of 3466 and 3472 apply, as the lower courts found in the present case in keeping with the Hernandez decision, then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out. Therein lies the conflict. If we let this ruling stand, we will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew.
La.R.S. 40:1299.47(B)(1)(a)(i) provides:

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section. (Emphasis added).
As we recognized in Everett v. Goldman, 359 So.2d 1256 (La.1978), this provision requires that a patient "must provoke a medical review panel and receive an opinion from it before he can file suit in a court of law. "Id. at 1263. If a medical review panel is timely confected, La.R.S. 40:1299.47(A)(2)(a) complements La.R.S. 40:1299.47(B)(1)(a)(i) by specially providing that "[t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted,... until ninety days following notification... to the claimant or his attorney of the issuance of the opinion by the medical review panel...." (Emphasis added). Thus, the plaintiff in the present case had available the suspension of prescription for ninety days as provided in La.R.S. 40:1299.47(A)(2)(a). Simply stated, the filing of a medical malpractice claim with a medical review panel triggered the suspension of prescription specially provided by the Medical Malpractice Act, rather than the interruption of the liberative prescriptive period generally provided in the Civil Code. See Bordelon v. Kaplan, 96-1205 (La.App. 3 Cir. 3/5/97), 692 So.2d 581; Wimberly v. Schumpert Med. Ctr., 25,957 (La.App. 2 Cir. 8/17/94), 641 So.2d 1016, writ denied, 94-2311 (La.12/19/94), 648 So.2d 401. Accordingly, we find that the holding of Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3 Cir.1985) is not supportable, since it does not take into consideration the special rules formulated specifically for medical malpractice claims and is, therefore, overruled. Having so found, we further determine that the lower courts in the present case erred as a matter of law in finding that plaintiff's prematurely filed law suit could be simultaneously utilized with the special medical malpractice legislation to defeat the defendants' peremptory exception of prescription.
As elaborated upon hereafter, we find that our determination comports with the rationale for suspension espoused by G. Baudier-Lacantinerie & A. Tissier, as well as Plainiol. In 1 M. Plainiol, TRAITE ELEMENTAIRE DE DROIT CIVIL, No. 2698 (12 th ed.1939), reprinted in TREATISE ON THE CIVIL LAW at 594 (La.St.L.Trans.1959), Plainiol explained that suspension of prescription "is a measure of equity, invented through regard for certain persons who are not in a position to interrupt prescription when it is running against them." In this statement Plainiol recognized that suspension exists as an equalizer to litigants who find themselves in those instances where interruption of prescription is not available. In the present case, by virtue of the legislative enactment calling for the necessity of a medical preview panel prior to submission of the case to the district court, the legislature by special provision for the inclusion of suspension excluded the applicability of interruption of prescription.
Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider *1231 prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider. Simply applying the rules of suspension provided in the Medical Malpractice Act to the case before us, plaintiff's claim remained unaffected by prescription from August 19, 1992, through November 13, 1996, a period of fifty-one months. Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.[7]
We further find that our ruling also serves the judicial system by eliminating an advantage which Hernandez granted to those litigants who failed to follow the proper procedural sequence in medical malpractice litigation. As applied by Hernandez, those litigants who did not first submit their claim to a medical malpractice review panel as provided in La.R.S. 40:1299.47(B)(1)(a)(i) before filing suit in district court benefitted from their error by receiving an additional year after suspension had run within which to file their suit. Under our ruling herein, this anachronistic benefit exists no longer.

DECREE
We find that although the plaintiff's claim was suspended from August 19, 1992, until November 12, 1996, her action for wrongful death was clearly prescribed by February 3, 1997. Therefore, we reverse the lower courts' holdings and it is ordered, adjudged and decreed that the wrongful death action of Diana LeBreton against Drs. Felix O. Rabito, Patrick C. Breaux, and Thomas A. Krefft is dismissed with prejudice.
REVERSED AND RENDERED.
LEMMON, J., concurs and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
LEMMON, Justice, concurring.
I agree with the result and with much of the reasoning in the opinion by the majority, but would prefer to rest the result on the basis that the prescriptive period for instituting a medical malpractice action is inapplicable once a timely claim has been filed for a medical review panel and the panel has rendered a decision.
After a medical malpractice victim asserts a cause of action against a qualified health care provider under La.Rev.Stat. 40:1299.47 A(2)(a), the amount of time remaining in the prescriptive period is only relevant if the action is dismissed prior to completion of the medical review panel procedure. Prescription is suspended during the panel procedure, but once the procedure is completed and the medical review panel renders a decision, then the prescriptive period for instituting the initial proceeding becomes totally irrelevant.[1] The question thereafter is not when the prescriptive period for instituting an action accrues on the cause of action that has already been asserted, but whether the instituted action remains alive by timely filings in the district and appellate courts.
*1232 CALOGERO, Chief Justice, dissenting.
The majority concludes that a medical malpractice plaintiff cannot simultaneously take advantage of an interruption of prescription, caused by the filing of suit in a court of competent jurisdiction under Civil Code article 3462, and a suspension of prescription, caused by the subsequent filing of a request for review of a medical malpractice claim before a medical review panel under LSA-R.S. 40:1299.47(A)(2)(a). This is so, the majority reasons because "the specific statutory provision providing for the suspension of prescription in the context of medical malpractice should ... [be] applied alone, not complementary to the more general codal article which addresses interruption of prescription." Slip op. at 1227 (emphasis added). I disagree.
Although the majority expressly recognizes the long-standing rule of statutory construction that "where two statutes deal with the same subject matter, they should be harmonized if possible ....," slip op. at 1229, the majority ignores the fact that the two provisions at issue can be harmonized and that, because no conflict between the provisions exists, the court need not apply one provision to the exclusion of the other.
I find no conflict at all between the provisions at issue (Civil Code article 3462 and LSA-R.S. 40:1299.47(A)(2)(a)), as both provisions can easily be harmonized with the result of each provision being given full effect. Thus, the rule of statutory construction relied upon by the majoritythat is, a conflict, the statute specifically directed to matter at issue must prevail as an exception to the statute more general in character[1]is simply not applicable. Rather, the majority should have been guided by the principle set forth in Civil Code article 9, which reads as follows:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.

LA. CIV. CODE ANN. art. 9 (West 1993) (emphasis added). In applying this rule, I note that neither Civil Code article 3462, which provides for the interruption of prescription, nor LSA-R.S. 40:1299.47(A)(2)(a), which provides a suspensive period during the pendency of a claim before the medical review panel, contains any ambiguous language as to the circumstances that trigger the interruption or suspension of prescription. I also note that both provisions can simultaneously be applied as written without conflict.
Under Civil Code article 3462, prescription is interrupted by the filing of a suit in a court of competent jurisdiction and venuea simple straightforward rule. Thus, because plaintiff initially filed suit on August 18, 1992 in a court of competent jurisdiction and venue within the one-year prescriptive period, as the majority concedes, prescription was interrupted as a matter of law on that date and simple. Thus, the majority need nothave engaged in a furprovisions ther search for legislative intent as to whether prescription should be interrupted even though the suit was filed prior to the claim's being reviewed by the medical review panel.
Likewise, under LSA-R.S. 40:1299. 47(A)(2)(a), prescription is suspended when a timely request for a medical review panel is made and remains suspended until ninety days after receipt of notification of the medical review panel's opinion. Period. Thus, because plaintiff made a timely request for such a review on August 19, 1992, prescription was suspended until November 12, 1996ninety days after plaintiff's attorney was notified of the medical review panel's decision, and, again, the majority need not and should nothave engaged in a further search for legislative intent of the applicability of the suspensive period where a suit was Pending in the district court.
Usually, after prescription has been interwritten under Civil Code article 3462, the *1233 prescriptive period begins to run anew from the date of a judgment dismissing the suit without prejudice. However, in the instant case, prescription could not have begun to run anew from the July 20, 1993 judgment that dismissed plaintiff's suit without prejudice for prematurity because a suspension of prescription was in effect at that time pursuant to LSA-R.S. 40:1299.47(A)(2)(a). Thus, the running of the new prescriptive period must be delayed until the suspensive period is liftedin this case until November 12, 1996, at which time the full one-year prescriptive period could begin to run anew. This result, which clearly harmonizes the two provision at issue, is, in fact, mandated by the long-standing jurisprudential rule: Where there are two permissible interpretations of a prescriptive statute, the courts must adopt the one that favors maintaining rather than barring the action. Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972).
As further support for its conclusion that the plaintiff cannot simultaneously take advantage of the interruption of prescription pursuant to Civil Code article 3462 and the suspension of prescription pursuant to LSA-R.S. 40:1299.47(A)(2)(a), the majority notes that a contrary finding would encourage medical malpractice plaintiffs to file premature suits in the district court, prior to filing requests for review before the medical review panel, in order to gain an additional year of prescription. Although I find the majority's concern to be unwarranted, I note that it is within the exclusive province of the Legislature to correct any such undesired "loophole" that might result from the courts' concurrent application of two unambiguous and non-conflicting statutory provisions.
For the reasons given above, I respectfully dissent.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, Section 3.
[2] After being removed from mechanical respiration, Mr. LeBreton was able to breathe on his own.
[3] Drs. Rabito and Breaux filed their exception of prescription on March 26, 1997; Dr. Krefft filed his exception of prescription on April 10, 1997.
[4] Theoretically this may be so. However, as noted by Joyce M. Cossich, Comment, The Suspension and Commencement of the Running of Liberative Prescription, 34 Loyola Law Review 341, 343, 345, 371 (1988), this latter reason may no longer be true in all matters. Undiscovered injuries due to legal and medical malpractice and latent or slowly progressive disease as a result of wrongful exposure to hazardous substances or occupational accident are but two examples which challenge this policy reason.
[5] We save for another day the question of whether the medical malpractice victim gets any period of time that remained unused at the time of the filing of the request for the medical review panel when the ninety-day period of suspension after the decision of the medical review panel is completed. That question is not presently before us.
[6] Plaintiff has conceded that she can only defeat defendants' peremptory exception of prescription if she can simultaneously take advantage of interruption and suspension of prescription.
[7] As regards the non-qualified health care provider and cases not involving medical malpractice, La.Civ.Code art. 3462, the general provision, provides for interruption of prescription.
[1] The Medical Malpractice Act contemplates one procedure with specific time delays between the required steps of the request for a medical review panel (which suspends prescription), the petition to the district court after the panel decision, and the petitions for appeal to the court of appeal and for certiorari to this court. The scheme does not contemplate an additional interruption of prescription by an improperly filed suit in district court which is immediately subject to dismissal on prematurity.
[1] I also take issue with the majority's conclusion that LSA-R.S. 40:1299.47(A)(2)(a) is more specific than Civil Code article 3462. The two provisions do not address the same subject matter, as the former is concerned only with providing a suspensive period, whereas the latter is concerned only with the interruption of prescription. As such, I fail to see how two unrelated statutes could be compared as one being more specific or more general than the other.