JjTERRI F. LOVE, Judge.
The plaintiffs appeal the trial court’s dismissal of their claims against defendant doctors who performed foot surgery on them minor child. The trial court denied their motion for new trial after maintaining defendants’ exception of prescription.
This is a medical malpractice action involving foot surgery on a ten-year-old boy, Hunter Fortier, with spina bifida that caused spinal nerve damage to his feet and ankles. Dr. MacEwen at Children’s Hospital had performed several surgeries on the boy over the period of 1987 through 1993 to correct problems of limited sensation and feet turned inward. In July 1993, the left foot seemed to be in satisfactory condition, but the physician recommended an additional surgery for the right foot, which was still turning inward.
On July 20, 1993, Mrs. Fortier, Hunter, and Hunter’s sister met with Dr. Dehne, the associate of Dr. MacEwen to discuss the surgery. According to the child’s mother, when Dr. Dehne walked into the room and saw Hunter, he remarked: “You’re in pretty bad shape, buddy. You could lose that foot.” Hunter and his sister started crying, thinking that Hunter’s foot was going to be taken off right then. Mrs. Fortier stood up and told the doctor that apparently he had the wrong room, and she introduced herself. He told her that he knew who she was 1 ?and she immediately left, with the children still crying. She called her husband and asked him to call Dr. MacEwen and tell him what had happened. Later that evening, Dr. Ma-cEwen called the Fortiers, apologized for the remarks by his associate, and reassured them that he (Dr. MacEwen) would perform the surgery on Hunter, not Dr. Dehne. He also told them that he had found a slot for Hunter’s surgery the following Monday (July 26, 1993) and they were to come in to discuss same with him on Saturday.
At the Saturday meeting, the Fortiers and Mrs. Fortier’s mother met with Dr. MacEwen; Hunter and his sister were left at home. The physician calmed their fears reassuring them that Hunter was not going to lose his foot, and that Dr. MacEwen would take care of Hunter. The Fortiers testified that they told Dr. MacEwen on that Saturday preceding the Monday surgery that they did not want Dr. Dehne in the surgery with their son and were very specific about that demand.
*821 Despite these assurances, however, Dr. Dehne (and two other doctors) performed the surgery on Hunter; Dr. MacEwen did not participate in the surgery, and was not even scrubbed for the surgery although he testified that he was present in the room and was “captain of the team.” He also testified that he never discussed this fact with the Fortiers.
Following the surgery, Mrs. Fortier and Hunter went to Lafayette where her parents live. Hunter began complaining of pain by Wednesday and had a fever. Mrs. Fortier reported this to Kate Kelleher, Dr. MacEwen’s nurse, who reported same to Dr. Dehne and called Hunter’s mother with instructions (she left a message with someone whom she thought was a male babysitter). Nothing was said to the babysitter about also having the bandages underneath the cast split and the skin of the foot visually checked by the physician. Dr. Dehne had not conveyed these details to the nurse, according to her deposition. Hunter developed lapressure necrosis in that foot from not having the bandage cut, which required extensive medical treatment and subsequent operative procedures.
Nearly a year after the surgery at issue, the Fortiers obtained Hunter’s medical records from Children’s Hospital (in July 1994) and, upon reviewing same, learned that Dr. Dehne, not Dr. MacEwen, had performed the surgery. Of course, the parents were shocked and shortly after the discovery, decided to initiate legal action against Dr. MacEwen, Dr. Dehne, and Children’s Hospital.
They first filed a request for review on July 25, 1994 with the Patient’s Compensation Fund (“PCF”), then a separate civil action against Dr. Dehne on July 26, 1994. The PCF informed the Fortiers that the two doctors were not qualified health care providers (“QHPC”) within the meaning of Louisiana’s Medical Malpractice Act, although Children’s Hospital is a QHCP. Additionally, the PCF did not inform the Fortiers that the doctors were state employees.
The Fortiers amended their petition on September 8, 1994[1] to include Dr. MacEwen as a defendant and stated that he was not a QHCP as indicated by the PCF. They were not notified of the doctors state employment until counsel for the physicians, Jude Bourque, advised them of this fact in October 1994. At that time, Mr. Bourque also suggested that a state medical review panel should be convened to consider the claims against the doctors. The plaintiffs requested such medical review on October 11, 1994. Although the lawsuit against the physicians was later dismissed pursuant to their exception of prematurity, at the time that the state review panel was initiated, the lawsuit was still pending.
The chronology of this lengthy and pro-eedurally complex case is important. A number of judgments have been rendered in this case, but the last one, which precipitated the instant appeal, was the trial court’s denial of plaintiffs motion for [4new trial, which was signed on February 22, 2001. The following is a chronology of the occurrences, exceptions and judgments in the case:
July 26, 199S-Surgery performed on Hunter Fortier.
July ISSJ-Fortiers discovered that Dr. Dehne, rather than Dr. MacEwen, performed the surgery on Hunter.
July 25, !S5J-Request for review filed with PCF for “private” medical review panel.
*822 July 26, 100J-Medical battery suit filed against Dr. Dehne.
July 27, 100J-PCF notified the Fortiers that Drs. Dehne and MacEwen were not qualified health care providers.
September 8, 1994-Lawsuit against Dr. Dehne was amended to include claims of negligence against Dr. MacEwen pursuant to the notification from PCF that the doctors were not qualified under the Medical Malpractice Act (“MMA”).
October I09J-Counsel for State informed Fortiers that doctors were state health care providers.
October 11, 100J-Fortiers requested Commissioner of Administration institute a “state” medical review panel.
November 21, 199⅛-State filed exception of prematurity as to battery claims against Dr. Dehne contending that a medical review panel, not a lawsuit, was procedurally proper. Exception was granted.
October 1996-Medical review panel issued its opinion.
November 8, lOOO-Fortiers filed suit against doctors for negligence (postoperative care) and lack of consent.
June 2, 1907-Doctors answered and third partied Dr. Cobb (physician in Lafayette, Louisiana who provided the post-operative procedure).
August 6, 1997-Defendant Dr. Dehne filed exception of prescription re: battery claims contending only lawsuit could toll the running of the statute of limitations, not a medical review panel proceeding. The trial court granted the exception.
December 8, 1997-On rehearing, the trial court reversed its prior grant of defendant Dr. Dehne’s exception of prescription with respect to plaintiffs’ claims against him based on medical battery, and denied the exception.
[ JPebruary 2, lOOS-This court denied writs and issued written reasons.
April 9, 1005-Louisiana Supreme Court denied writs.
September 1, 1998-The trial court denied defendants’ Motion for Summary Judgment as it pertained to the issue of informed consent; granted as to all other matters (and was designated as a final judgment for purposes of La. C.C.P. art. 1915).
December 7, 1999-This court issued its order dismissing plaintiffs’ appeal.
May 26, 2000-Defendants filed two additional exceptions: (1) exception of prescription (the State contended that a lawsuit could never interrupt prescription); and (2) exception of no cause of action as to the medical battery claim (because under Lugenbuhl, the tort of medical battery was eliminated that the holding should be retroactively applied to bar the Fortiers’ claim).
July H, 2000-At the hearing on the exceptions, the trial court granted Dr. Dehne’s exception of no cause of action re: the medical battery claim, but gave plaintiffs 15 days to amend their petition; the trial court did not rule on the exception of prescription (counsel for the plaintiffs asked the court if it considered the issue of prescription mooted by the court’s ruling on the exception of no cause of action, to which the court responded affirmatively).
July 18, 2000-Plaintiffs amended their petition to allege that Dr. Dehne had committed medical malpractice rather than battery for operating on their son without them consent.
November 8, 2000-Dr. Dehne filed a motion to strike the plaintiffs’ revised and amended allegations asserting *823 malpractice, contending that plaintiffs had merely restated their battery claim that had been dismissed by the court’s earlier ruling.
November 17, 2000-Trial court granted defendants’ motion to strike the amended allegations of malpractice and maintained the exception of prescription, dismissing the plaintiffs’ suit against the defendants with prejudice.
The court stated from the bench:
The exception of prescription is granted. Pursuant to revised statute 40:1299.47, the plaintiffs’ claim was suspended sixty (60) days from notification by the PCF, that was on July 27, 1994, that the defendant doctors were not qualified under the private Act. Since the claim was not properly filed until more that [sic] sixty (60) | fidays later, the Court finds that the claim is untimely, pursuant to the Le-Breton decision, and should be and is hereby dismissed.
November 22, 2000-Plaintiffs moved for new trial; trial court denied motion for new trial, stating:
Pursuant to La. C.C.P. art.1972, plaintiff has failed to articulate any grounds for a new trial. Defendants are both qualified under the medical malpractice act as public health care providers. In accordance with LeBreton v. Rabito, 714 So.2d 1226 (La.7/8/98), these defendants are subject to the suspension of prescription as provided under the Act. Therefore, defendants’ Exception of Prescription is maintained pursuant to La. R.S. 40:1299.47 since the plaintiffs’ claim was suspended for sixty days from notification by the Patient Compensation Fund (July 27, 1994) that the defendants were not qualified under the private Act. Since the claim was not properly filed until more than sixty days later, the claim is untimely and under LeBreton is dismissed. (Emphasis added).
March 2, 2007-Plaintiffs filed their motion and order for a devolutive appeal.
ANALYSIS
1. Prescription Issues
Plaintiffs argue that the filing of a timely tort action (based on medical battery) in 1994, prior to the elimination of the tort of medical battery, which occurred in 1997[2] stopped the running of prescription pursuant to La. Civ.Code art. 3462. Under art. 3463, this interruption continued as long as the suit was pending.
The lawsuit remained pending until it was dismissed in response to defendants’ filing the exception of prematurity. The plaintiffs contend that the statute was tolled during the pendency of the lawsuit, and then the “state” medical 17review was instituted and the statute was suspended during the pendency of its proceedings.
In 1994, when plaintiffs filed suit against Dr. Dehne, appellants argue that the malpractice statutes did not apply to the battery-based claim.[3] Plaintiffs argue, there *824 fore, that the lawsuit, which was timely filed in a court of competent jurisdiction with proper venue, served to interrupt prescription. Defendants argued that this conclusion is altered by the rejection of medical battery in favor of breach of duty to inform the patient, which occurred in Lugenbuhl. Appellants assert, however, that Lugenbuhl’s holding cannot be retroactively applied to a case that had already been properly filed and had interrupted prescription.
In 1994, when suit was filed against Dr. Dehne for medical battery, such cause of action was not a claim involving medical malpractice under the prevailing jurisprudence. See, e.g., Karl J. Pizzalotto, M.D., Ltd. v. Wilson, 437 So.2d 859 (La.1983); Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988) (on rehearing). Thus, as to that tort claim, plaintiffs assert that the general articles governing prescription apply: La. Civ. Code arts. 3462, 3463. To apply Lu-genbuhl retroactively, therefore denying plaintiffs their rights to proceed with their claims, would be manifestly unjust.
When the trial court issued its ruling from the bench on July 14, 2000 concerning whether the plaintiffs had stated a cause of action based on an intentional tort, the court explained its ruling in favor of defendants as follows:
|sThe exception of no cause of action for prescription[4] is granted. Pursuant to the Supreme Court decision in Lugen-buhl versus Dowling, 701 So.2d 447, the plaintiff has no cause of action for medical battery.
In Lugenbuhl, the Supreme Court rejected the “battery-based liability in lack of informed consent cases in favor of liability based on breach of the doctor’s duty to provide the patient with material information concerning the medical procedure,” specifically, at page 453.
The Fourth Circuit has followed this principal [sic] and dismissed similar cases even after the fact, that is, applying it retroactively. And, I refer to Barnes versus Harandi, 727 So.2d 530, ... and In re: Medical Review Panel for the Claim of James Larche, 714 So.2d 56 [(La.App. 4 Cir.1998)],....
In Larche, this court explained that in “La. Acts 1990, No 1093, the Legislature amended LSA-R.S. 40:1299.40, the Uniform Consent Law, to add Subsection E, which became effective on July 31, 1990.” This court also noted therein that the supreme court in Lugenbuhl had cited that amendment when it jurisprudentially rejected the medical battery tort in 1997. This court concluded in Larche that:
Further, by the 1990 amendments to LSA-R.S. 40:1299.40, the Legislature has stated that the only theory of recovery for failing to disclose material risks to a patient is that of negligence.
Id. at 59 (emphasis supplied).
Therefore, although this court did not expressly address the issue of retroactive application of Lugenbuhl, the above-quoted passage constitutes an implicit approval for such retroactive application, which the court did in that case because the lawsuit was filed by the Larches on October 11, 1996, prior to the October 10, 1997 decision *825 in Lugenbuhl. See also Barnes v. Harandi, 98-0781, 98-0782 (La.App. 4 Cir. 12/9/98), 727 So.2d 530 (lawsuit filed on January 3, 1996 and amended to include battery claim on March 14,1997).
| ¡^Distinguishing the plaintiffs’ case from Barnes and Larche, however, is that the Fortiers were not suing Drs. Dehne and MacEwen because of their failure to disclose material risks and hazards of the surgery. Rather, they were relying upon the assurances given to them by Dr. Ma-cEwen that he, not Dr. Dehne, would perform the surgery on their son, Hunter. Thus, the statutory reference was not applicable and Lugenbuhl will not be retroactively applied under the peculiar factual circumstances of the instant case.
Subsequent to the above judgment, on November 17, 2000, the trial court granted defendants’ motion to strike and maintained their exception of prescription. The court granted the former based again on LugenbuhVs rejection of the medical battery tort and rested its decision regarding prescription on the 1998 case, LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, where the court articulated the issue presented as:
The sole issue before us in this medical malpractice claim is whether the lower courts erred as matter of law in applying the general provision on interruption of prescription found in La. Civ.Code art 3462 simultaneously with the specific provision on suspension of prescription contained in La. R.S. 40:2399.57(A)(2)(a) of the Louisiana Medical Malpractice Act to defeat the defendants’ peremptory exception of prescription.
Id. at 1226.
The court explained that:
Prescription runs against all persons unless an exception is established by legislation. La. Civ.Code art. 3467..'..
Actions for medical malpractice against certain health care providers, ... are governed by special laws ... which delineate the liberative prescription applicable to actions for medical malpractice under Title 40. It specifically provides, inter alia, that the filing of a medical malpractice claim with the board only suspends the time within which suit must be instituted in a district court. On the other hand, if the general codal articles of 3466 and 3472 apply, ... then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out. Therein lies the conflict. If we let this ruling stand, we will condone and encourage the technique of | munnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the .claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in'addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew.
Id. at 1228-30.
Appellants argue, however, that LeBre-ton is not applicable and cites footnote 7 where the court explains that its analysis and decision did not apply to “non-qualified” health care providers: “As regards the non-qualified health care provider and cases not involving medical malpractice, La. Civ.Code. art. 3462, the general provision, provides for interruption of prescription.” Id. at 1231, n. 7 (emphasis added).
One issue in the instant ease is whether Drs. Dehne and MacEwen were qualified or non-qualified health care providers under the Act. The trial court variously refers to them as “not qualified” and “quali *826 fied.” But the July 27, 1994 letter to the Fortiers stated:
Please be advised that Dr. Robert Dehne, Dr. Dean MeEwen and Dr. Donald McCartney are not qualified health care providers and therefore not entitled to the provisions of La. R.S. 40:1299.41 et seq. (emphasis added).
Upon reviewing this letter, it is clear that the Fortiers were not informed that the physicians were state employees', thus, the plaintiffs arguably relied upon their lawsuit (filed July 26,1994) to protect their claim against the doctors.
The above notification was mailed on July 27, 1994; thus, the suspension of the running of the statute of limitations continued until at least September 27, 1994. Before September 27, 1994, specifically on September 8, 1994, petitioners instituted suit against Dr. MacEwen by amending their original petition against Dr. Dehne. According to plaintiffs, the suit was amended because of the information | ti obtained from the PCF that neither doctor was a QHCP; thus, their only known remedy was in a civil action.' At that time, the plaintiffs did not know, and had no reason to know, that LSU Medical School employed the doctors while they were working at Children’s Hospital.
The interruption in prescription caused by the filing of the above suit, which originally had been filed much earlier, but did not include Dr. MacEwen, continued when the “state” medical review panel proceeding was begun on October 11, 1994. Therefore, plaintiffs assert that the “state” medical review panel request was timely filed against both doctors.
Defendants argued first that La. R.S. 40:1299.39.l(B)(l)(a)(i) prohibits the filing of a suit in district court prior to the issuance of an opinion by a medical review panel. Second, defendants asserted that the court in LeBreton clarified that special laws govern medical malpractice actions against qualified state health care providers. Overruling Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3d Cir.1985), the court stated that it did so due to its “finding that the specific statutory provisions providing for the suspension of prescription in the context of medical malpractice should have been applied alone, not complementary to the more general codal article which addresses interruption of prescription.” LeBreton, 714 So.2d at 1227.
Defendants point out that although plaintiffs filed their claim with the PCF on July 25, 1994 and the lawsuit in district court on July 26,1994, pursuant to LeBre-ton, that suit did not interrupt prescription. The claim filed with the PCF would have been timely, but the defendants are not covered under the private Act. The plaintiffs, therefore, had 60 days to file their action with the Commissioner of Administration pursuant to La. R.S. 40:1299.47(A)(2)(a), which provides:
|12The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, ... or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification ... that the health care provider is not covered by this Part.
According to defendants, because plaintiffs did not file their claim with the Commissioner of Administration until October 19, 1994,[5] the 60-day time period had run; thus, the claim was prescribed.
*827 Plaintiffs argued that LeBreton does not change the law with respect to interrupting prescription by a lawsuit filed before the filing of a medical review panel proceeding. Their first lawsuit interrupted the running of the statute of limitations, asserted plaintiffs, because they were under the impression, relying upon the PCF’s information, that the doctors were not QHCP.
The quoted section of La. R.S. 40:1299.47 above provides the time period for the filing of a suit after a negative opinion from the review panel. Defendants argue that it pertains to the time necessary for filing the claim with the Commissioner of Administration requesting the “state” review panel be convened. That is an incorrect interpretation of the statute.
The transcript of the rule on these motions is instructive to understand why the trial court decided that the case was prescribed. Plaintiffs’ counsel argued that footnote 7 in LeBreton applies and that, based on that footnote, the general codal articles applied when plaintiffs learned from the PCF that the doctors were not qualified health care providers under the Act; they were not informed that the doctors were state employees and, because they were working at a private hospital (Children’s) that is a qualified health care provider under the Act, they had no 1 ^reason to assume that the doctors were state employees (and, therefore, qualified under a different section of the Act).
The court asked defendants’ counsel to comment on the applicability of footnote 7. Mr. Bourque distinguished the “non-qualified” health care provider referred to in the footnote by saying that he thought the court had intended that to mean a doctor who did not pay into the PCF, but who was also not a state employee. The court apparently adopted the position argued by defendants’ counsel.
Defendants, and the trial court, state that the doctors are qualified under the state portion of the Act. They also state that the doctors are not qualified, referring presumably to the private act. Technically, although the doctors are QHCP under the state portion of the MMA, the plaintiffs were not informed of such and had no reason to suspect the doctors’ state employment status until October 1994. As soon as they learned of the state employment, they filed a request with the Commissioner of Administration for a “state” medical review panel to be convened.
We find that the statute of limitation was interrupted by the filing of the lawsuit(s), which were pending during the two (2) different timely requests for medical review (private, then “state”). Here, the plaintiffs filed suit and a request for a medical review immediately upon discovering that the doctor who promised to perform the surgery on their son (and who had performed previous surgeries on Hunter) was not, in fact, the surgeon, and where the plaintiffs later filed a request for a “state” review panel immediately upon learning of the doctors’ state employment status.
114The plaintiffs did everything they could do in a timely fashion to prosecute these doctors for medical malpractice. The trial court’s judgment is reversed.
REVERSED.

. Suit was, therefore, filed against Dr. Mac-Ewen less than 60 days from notification from PCF that the doctors were non-qualified health care providers.

. See Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447, 453 ("We therefore reject battery-based liability in lack of informed consent cases (which include no-consent cases) in favor of liability based on breach of the doctor's duty to provide the patient with material information concerning the medical procedure.").

. But note that the Louisiana Medical Malpractice Act was amended by Acts 1990, effective July 31, 1990, as discussed infra at page 824. The amendment states: "the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Arguably, it was not the risks or hazards that influenced the Fortiers *824 negatively about Dr. Dehne, but rather their terrible experience with him in the office visit that caused them to lose confidence in him and develop the absolute resolve that he would not operate on their child.

. There were two motions filed: (1) no cause of action, and (2) prescription. The court seems to treat them as one and the same at this juncture in its ruling. After the above-quoted passage, plaintiffs’ counsel asked the court: "Your Honor, did you rule on the exception of prescription? Do you think it's mooted by the exception of no cause of action?” The court responded: "Yes.”

. The request was actually filed on October ll, 1994.