TOBIAS, J.,
concurs and assigns reasons.
| ,1 write separately because the majority omits certain facts that I find relevant to an full understanding of the issues, why we reach the conclusion that we do, and to alert an interested observer as to some looming issues that may arise in the future as facts and circumstances may warrant.
On 25 August 2006, the plaintiff, Karen Lagasse, filed her suit alleging medical malpractice committed upon her deceased mother, Merle Lagasse, following and arising out of the events immediately following Hurricane Katrina striking the New Or *73 leans area on 29 August 2005. Prior to filing her suit, she failed to file her claim with the Louisiana Division of Administration seeking a medical review panel. See La. R.S. 40:1299.47. The defendant, Tenet Health System Memorial Medical Center, Inc. (“Tenet”), filed a dilatory exception of prematurity on 80 October 2006. The defendant, Roy J. Culotta, M.D., filed a decli-natory exception of insufficiency of service of process on 19 April 2007 that was subsequently overruled on 9 July 2007. On 27 September 2007, the plaintiff supplemented and amended her original suit. Dr. Culotta answered the original petition only on 8 October 2007.[1] Thereafter, the defendant, Richard E. |2Deichmann, Jr., M.D. (“Deichmann”), filed a supplemental dilatory exception of prematurity to the plaintiffs supplemental and amended petition.[2] On 7 November 2011, Tenet and the defendant, Rene Goux (“Goux”), filed a declinatory exception of prematurity to the supplemental and amended petition.[3] Reserving their rights as to the dilatory exceptions, Tenet and Goux answered the petition as supplemented and amended on 6 June 2008. Subsequently, Deichmann and Goux filed motions for summary judgment.[4] See La. C.C.P. art. 966 A. On 1 September 2010, the plaintiff again supplemented and amended her petition, by adding an allegation that Dr. Culotta had injected Merle Lagasse with a lethal dose of unknown narcotics. Dr. Culotta filed a further dilatory exception of prematurity to this new supplementation and amendment on 26 October 2010 to which was attached a certificate from the Division of Administration, showing that he was a qualified health care provider under La. R.S. 40:1299.41, et seq. (the Medical Malpractice Act). Finally, on 30 November 2010, the plaintiff filed a third supplemental and amending petition alleging euthanasia by Dr. Culotta. A judgment was rendered on 18 February 2011, sustaining only Dr. Culotta’s exception of prematurity; such is the only judgment presently before this court on appeal.[5]
In my view, this case is driven by the Louisiana Supreme Court’s decision in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, (and its progeny), wherein the Court held that the filing of suit against a qualified health care provider in the district court neither suspends nor interrupts the one year | ^prescriptive period for filing medical malpractice claims. LeBreton makes clear that a party asserting a claim of medical malpractice must assume that the allegedly malpracticing health care provider is a qualified health care provider under the Medical Malpractice Act. Before LeBreton, a person had a right to assume that his or her health care provider was not necessarily covered by the Medical Malpractice Act and could file a suit in the district court that would interrupt prescription. Thereafter, if the health care provider was determined to be a qualified health care provider, the dis *74 trict court suit would be deemed premature and had to be dismissed.[6] Thus, because Dr. Culotta was a qualified health care provider at the time of his treatment of Merle Lagasse and the plaintiff failed to first submit her claim to the Division of Administration such that it could be reviewed by a medical review panel, the case against Dr. Culotta is now prescribed. To, so-to-speak, circumvent the problem, the plaintiff in oral argument stated to this court that she abandons all of her claims against Dr. Culotta for medical malpractice except for the intentional tort of euthanasia.
Louisiana has a strong public policy against euthanasia. See La. Const. Art. I, § 20; La. R.S. 40:1299.35.9, 40:1299.58.10 and 40:1299.64.6.
By making a claim for only euthanasia, the plaintiff is trying to plead her way out of the medical malpractice act, as the majority notes. La. R.S. 40:1299.41 A(13) defines malpractice within the context of the Medical Malpractice Act as
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or |4from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
See also LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008 (La.9/5/07), 966 So.2d 519.
In Coleman v. Deno, 01-1517, 01-1519, 01-1521, p. 17-18 (La.1/25/02), 813 So.2d 303, 315-16, the Louisiana Supreme Court set forth a six-part test to determine whether a claim sounds in medical malpractice and must first be presented to a medical review panel:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, ...
(3) whether the pertinent act or omission involved assessment of the patient’s condition....
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
The Court further alludes to the issue of whether “the particular wrong is treatment related? or caused by a dereliction of professional skill.”
Ergo, a narrow conflict exists between our jurisprudence and statutory law. The Supreme Court has stated that if the medical malpractice claim (ie., medical treatment) is a tort and intentional, it still must be submitted to a medical review panel under the Medical Malpractice Act. Yet the law states that malpractice is an unintentional act. Our consideration in the case before us is complicated by the plain *75 tiffs pleadings and more particularly, her supplemental and amending petition of 30 November 2010 that reaffirmed and re-alleged by incorporation all | fiof her allegations set forth in her original and earlier filed supplemental and amending petitions.
To reach the conclusion to which the majority arrives and to fall within the narrow gap between the statutory definition of malpractice and the decision in Coleman v. Deno, we must assume that the plaintiffs claim of “euthanasia” against Dr. Cu-lotta is not in any way related to medical malpractice but is a claim for wrongful death caused by a homicide. But not merely any ordinary homicide, but one that constitutes first degree murder, second degree murder, or manslaughter. La. R.S. 14:29, relative to the crime of homicide, defines homicide as
... the killing of a human being by the act, procurement, or culpable omission of another. Criminal homicide is of five grades:
(1) First degree murder.
(2) Second degree murder.
(8) Manslaughter.
(4) Negligent homicide.
(5) Vehicular homicide.
Obviously, the plaintiff by saying that her claim no longer relates to medical malpractice contemplates that the physician did not act negligently (cf., La. R.S. 9:5628), taking her case out of the ambit of negligent homicide (criminal or non-criminal). Thus we have by our holding narrowed the plaintiffs claim for the wrongful death of Merle Lagasse against Dr. Culotta as a homicide, purely, simply, and regardless of whether it is couched in the term: euthanasia. The opinion of this court must be read to exclude from the plaintiffs claim anything relating to medical malpractice to exclude the cause of action from the ambit of Coleman v. Deno, supra, and the ambit of the definition of malpractice in La. R.S. 40:1299.41 A.
|r,I am troubled by this, especially because plaintiffs counsel repeatedly said that the only claim he was asserting against Dr. Culotta was euthanasia as an intentional act. Certainly, the question of the medications that Dr. Culotta injected into Merle Lagasse has medical considerations and indicia that will require medical testimony to explain to the trier of fact why the medication can and does cause death. The medicinal questions certainly sound as within the fair and reasonable grist of a medical review panel’s jurisdiction if the plaintiffs claim remained in medical malpractice.
That which is reserved for another day is if the plaintiff fails to prove her now very limited claim for the intentional tort of homicide (euthanasia), does she and her counsel open themselves up to a subsequent tort claim by Dr. Culotta of defamation?
We have done by our decision that which the plaintiff requested. My concerns as expressed above cause me to respectfully concur, albeit reluctantly, with the majority.

. All declinatory and dilatory exceptions must be raised at the same time. La. C.C.P. arts. 925 C and 926 B. The filing of an answer waives the right to plead declinatory and dilatory exceptions unless the exception is pleaded in the answer. La. C.C.P. art. 928 A.

. Apparently, Dr. Deichmann filed an earlier dilatory exception of prematurity which is not part of the record on appeal.

. Apparently, like Dr. Deichmann, Goux had filed an exception of prematurity that does not appear in the record on appeal. Goux is apparently the CEO of Tenet.

. Deichmann?s motion for summary judgment was granted on 24 September 2010 and he was dismissed from the case.

. All matters against Tenet have been stayed by the trial court, including the issue of Tenet?s exception of prematurity.

. LeBreton has been applied retroactively. Sherman v. Touro Infirmary Hospital, 00-1365. 00-1366. 00-2573. 00-2574. 02-1058. 02-1059 (La.App. 4 Cir. 10/30/02), 832 So.2d 334.