972 So.2d 485 (2007)
In re MEDICAL MALPRACTICE CLAIMS REGARDING Anthony DIECIDUE, Jr.
No. 07-CA-656.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
Rehearing Denied January 22, 2008.
*486 Timothy J. Falcon, Jeremiah A. Sprague, Attorneys at Law, Marrero, Louisiana, and Michelle Hesni Davidson S. Ehle, III, Attorneys at Law, Gretna, LA, for Plaintiff/Appellant.
William D. Treeby, John P. Farnsworth, Ashlee M. Robinson, Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Appellant Gayle Ordoyne, appeals from the trial court judgment granting the exception of prescription filed by Defendant, Maison De'Ville Nursing Home of Harvey, L.L.C., and finding "that all of plaintiff Rita Avocato's survival action claims concerning Anthony Diecidue, Jr. have prescribed." For the reasons which follow, we reverse and remand.
From the limited record before us, it appears that Anthony Diecidue, age 78, was a resident of the Maison De'Ville nursing home from April 1999 until November 15, 2004, when he was hospitalized at West Jefferson Medical Center with severe bed sores on his tail bone, hip and shoulder. He also had severe blistering on his foot and face as well as a yeast infection in his mouth. Gayle Ordoyne, the daughter of Diecidue's wife, thus, his stepdaughter, was appointed Diecidue's mandatary in 1999, and has cared for him since that time. Soon after Diecidue's hospitalization, Ordoyne informed Maison De'Ville that he would not be returned to its care. Diecidue died on March 5, 2005. On October 13, 2005, an attorney, Michelle Hesni, sent a letter to the Commission of Administration in her "capacity as legal counsel of Gayle Ordoyne, o/b/o Anthony J. Diecidue, deceased, pursuant to the Act La. R.S. 40:1299 A(2)(a)" requesting a medical panel review of Diecidue's medical malpractice claims, alleging abuse and neglect against Maison De'Ville. On November 6, 2006, Ordoyne was appointed executrix of the Succession of Anthony Diecidue by Rita Avocato, the surviving blood sibling of Diecidue, to prosecute the medical malpractice claim against Maison De'Ville.
On November 17, 2006, Maison De'Ville filed an "Exception of Prescription" alleging that Ordoyne, as Diecidue's stepdaughter, "had no standing to initiate and prosecute a medical malpractice claim under La. R.S. 40:1299.41 et seq." It was further alleged in the exception that only one or both of Diecidue's two surviving sisters, Rita Avocato or Cecile Cherrier, could have initiated the malpractice proceedings. Since it is well over a year from the time of the alleged malpractice, any claims by Avocato would be prescribed. Therefore, it was requested that the court "uphold the exception of prescription and order the *487 dissolution of the medical review panel proceedings at plaintiff's cost. . . ."
In opposition to the exception, Ordoyne argued that she was the mandatary for Diecidue for over five years preceding his death. She was the person who cared for him, physically and financially. She timely filed the complaint with the Division of Administration requesting the medical review panel on his behalf and/or, by implication, that of his heirs. Ordoyne's capacity to file the claim was not provided in the original letter. Ordoyne alleges that Rita Avocato intended for Ordoyne to pursue the claim and formally put that intent in writing in November 2006. Ordoyne attached to her opposition to Maison De'Ville's exception, a copy of a letter sent to the Division of Administration dated December 28, 2006 by Ordoyne's attorney, asking that the complaint filed on October 13, 2005 be amended, designating Ordoyne as mandatary for Rita Avocato. All claims against Maison De'Ville remained the same and the only change was in Ordoyne's capacity. Ordoyne argued that the amendment to the complaint related back to the original filing date.
Following a hearing, the trial court, on January 24, 2007, rendered judgment granting the exception of prescription and finding "that all of plaintiff Rita Avocato's survival action claims concerning Anthony Diecidue, Jr. have prescribed." It is from this judgment Ordoyne appeals.
Actions for medical malpractice against certain health care providers, such as the Defendant herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La. R.S. 40:1299.41, et seq. and La. R.S. 9:5628, which delineate the liberative prescription applicable to actions for medical malpractice under Title 40. LeBreton v. Rabito, 97-2221, p. 8 (La.7/8/98), 714 So.2d 1226, 1229. It is specifically provided that the filing of the request for review of a claim by a medical panel shall suspend the time within which suit must be instituted. La. R.S. 40:1299.47(A)(2)(a).
The Supreme Court, in LeBreton, elaborated on the concept of suspension of prescription by filing a request for review by a medical review panel as follows:
As elaborated upon hereafter, we find that our determination comports with the rationale for suspension espoused by G. Baudier-Lacantinerie & A. Tissier, as well as Plainiol. In 1 M. Plainiol, TRAITE ELEMENTAIRE DE DROIT CIVIL, No. 2698 (12 th ed.1939), reprinted in TREATISE ON THE CIVIL LAW at 594 (La.St.L.Trans.1959), Plainiol explained that suspension of prescription "is a measure of equity, invented through regard for certain persons who are not in a position to interrupt prescription when it is running against them." In this statement Plainiol recognized that suspension exists as an equalizer to litigants who find themselves in those instances where interruption of prescription is not available. In the present case, by virtue of the legislative enactment calling for the necessity of a medical review panel prior to submission of the case to the district court, the legislature by special provision for the inclusion of suspension excluded the applicability of interruption of prescription.
Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies *488 that the filing of a request for review before a panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.
LeBreton, 97-2221, at pp. 9-10, 714 So.2d at 1230-1231.
Legislation is a solemn expression of legislative will. Interpretation of a law is primarily the search for the Legislature's intent. La. C.C. art. 2; O'Regan v. Preferred Enterprises, Inc., 98-1602, p. 4 (La.3/17/00), 758 So.2d 124, 128; Cat's Meow v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La. 1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no further interpretation may be made in search of legislative intent. La. C.C. art. 9; Perritt v. Dona, 02-2601, p. 15 (La.7/2/03), 849 So.2d 56, 65-66. Moreover, all statutes limiting provisions applicable to qualified health care providers are "special legislation in derogation of the rights of tort victims" and are strictly construed. Perritt, 02-2606 at p. 15, 849 So.2d at 66. Based upon the provisions of La. R.S. 9:5628 and La. R.S. 40:1299.47(B)(2)(a) it has been held that the only exception a health care provider is allowed to assert during the medical panel review stage of the proceedings is the peremptory exception of prescription. Id.
Applying these precepts, provided in the Medical Malpractice Act (the Act) and interpreted in the jurisprudence, to the case before us, we find the running of prescription on the medical malpractice claim against Maison De'Ville for its negligent treatment of Diecidue was suspended by the initial filing of the request for the medical review panel on October 13, 2005. The Act does not authorize the assertion of an exception of no right or no cause of action to a request for a medical review panel. Thus, Ordoyne's capacity to request a medical panel review of the alleged negligent acts of Maison De'Ville has not been challenged. The request appears on its face to be valid and timely and it is still pending. Thus, under the plain wording of the medical malpractice act, prescription on the claim was suspended by the filing and remains suspended.
Maison De'Ville's exception of prescription, filed on November 17, 2006, to the initial request for a medical review panel, made within a year of the alleged negligent acts giving rise to Diecidue's injuries and not invalid on its face, had no merit.
At the hearing on the exception of prescription, however, the parties appear to have expanded their arguments and included therein arguments relating to whether Rita Avocato's survival cause of action concerning Diecidue had prescribed. It is not readily apparent how the district court reached that issue on an exception of prescription filed prior to the subsequent letter by Ordoyne to the Division of Administration. However, because the trial court judgment expressly finds any claims by Avocato against Maison De'Ville prescribed, we must address it.
*489 Counsel for Ordoyne wrote a second letter to the Division of Administration, dated December 28, 2006, informing the office that her initial request for a medical review panel, on behalf of Diecidue, should be considered in Ordoyne's capacity as mandatary for Rita Avocato. A new claim was not being asserted. It was expressly provided that all allegations of malpractice as alleged in the original complaint remained the same. The initial complaint provided that it was filed by Ordoyne on behalf of Anthony Diecidue without any reference to her capacity to do so. The subsequent letter simply provided the legal claimant to Diecidue's survival action by stating that Ordoyne was filing in the capacity of Avocato's mandatory.
Maison De'Ville cites and relies on the case of Gorham v. HCA Health Services of Louisiana, 34,721 (La.App. 2 Cir. 5/17/01), 786 So.2d 348, in support of its argument that Avocato's claims have prescribed. In Gorham, the court reversed the trial court judgment granting an exception of prescription. The court found that the replacement of the decedent's grandchildren in the request for a medical review panel, over two and a half years after the prescriptive period would have run, by the decedent's sister, related back suspending prescription. However, in reaching its conclusion, the court found that "[t]he same jurisprudential test governing `relating back' for purposes of adding or substituting parties to a lawsuit also applies in the instant case to the amended complaint" substituting claimants under the medical malpractice act in the request for a medical review panel. The defendants in Gorham had also filed an exception of no right of action to the initial complaint filed by the grandchildren.
We do not find the Gorham case persuasive. We note that it was rendered before the Perritt case, referred to above, in which the Supreme Court held that the only exception a health care provider can file during the medical panel review stage is the exception of prescription. The Court expressly held in Perritt that the exception of vagueness and no cause of action are inapplicable to the medical panel review stage of the proceedings. This pronouncement certainly calls into question the reasoning of the Gorham court, applying civil procedure rules to medical malpractice cases in the preliminary stage. Perritt's finding, contrary to the position espoused in Gorham, that only the prescription exception can be asserted during the medical panel review stage, supports our conclusion herein. Since the health care provider is not afforded the right under the Act to challenge the capacity of the claimant, prescription is suspended, under the Act, by the filing of the request for the panel and it remains suspended, allowing a change to be made in the capacity of the person filing the initial claim.
In this case, the capacity of Ordoyne to file the initial request for a review panel has not been, and indeed cannot be, tested during the medical panel review stage, because the only exception Maison De'Ville can file at this stage is an exception of prescription. The initial request for a medical review panel is not prescribed on its face because it was sent within a year of the alleged injuries. Considering the clear and unambiguous wording of the Act, stating that the filing of a request for a panel review suspends prescription, and the fact that such a request was timely filed and it has not been properly challenged, we find that the filing of this request suspended prescription. Further, with minimal rules in the Act concerning the form or substance of the letter requesting panel review and the inability to challenge its form or substance, we find no prohibition to designating or changing the capacity of the person who filed the request *490 during the period while prescription is suspended. Therefore, we find the trial court erred in concluding that Avocato's survival claims were prescribed.
Further, notwithstanding that there is no authority for applying the rules of Civil Procedure to claims under the medical malpractice act, Perritt v. Dona, 02-2601, pp. 12-13 (La.7/2/03), 849 So.2d 56, 64, we find that consideration of the case, Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La.1985), cited by both parties, supports our view. In Giroir, the deceased's husband, Roy Giroir, filed suit timely against certain healthcare providers asserting both survival and wrongful death actions. He filed the suit as the administrator of his wife's estate. Ten days later, but after prescription would have run, he filed an amending petition, adding his wife's two major children as plaintiffs in both the survival and wrongful death actions, and changing his capacity with respect to the survival action so that he appeared individually. In deciding whether the amending petition related back to the timely filed petition, the Supreme Court looked first to the Code of Civil Procedure, Article 1153, which provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
The Court next looked to the Federal Rules of Civil Procedure, Rule 15(c), as persuasive because our rule was based on the federal rule. The Court noted that "[t]he doctrine of relation back under Rule 15(c) is liberally applied today in federal courts, especially if no disadvantage will accrue to the opposing party." Id. at 1043. The Court then pronounced the now well known criteria for when the addition of a plaintiff by amending petition should be allowed to relate back, stating:
Accordingly, an amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
Giroir at 1044.
Additionally, the Court found even less problematic, the situation, as here, involving only a change in the capacity of the party. The Court found:
The problem of relation back of amendments involving a change in the capacity of the parties is less difficult. Where a plaintiff only seeks to change the capacity in which the action is brought, or in which defendant is sued, because there is no change in the parties, and because all parties are on notice of the facts out of which the claim arose, an amendment will relate back to the date of the original pleading absent prejudice due to the delay in filing.
Giroir at 1044.
In concluding that the amending petition adding two plaintiffs and changing Giroir's capacity related back to the original petition, the Court noted:
Under the circumstances of this case, no essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription amendment based on the same factual situation pleaded in the original *491 timely petition. Through the original pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
Giroir, at 1045.
Justice Marcus, concurring in the part of the decision that allowed the change in Giroir's capacity and the addition of the children's' survival action, but dissenting in the part that allowed the children's wrongful death action, stated most succinctly:
That the plaintiff bringing the action lacks the capacity to sue, for whatever reason, does not matter, if the defendant has been notified of the titles which are the foundation of the demand for the whole of the property or debt, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against him. Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973); Flower v. O'Connor, 17 La. 213 (1841). An amendment can be filed after the prescriptive period to name the correct plaintiffs or the correct capacity of the plaintiffs, and the amendment will relate back to the date of the original filing. La.Code Civ.P. art. 1153.
We find the pronouncements of Giroir persuasive, if not controlling, in finding that the trial court erred in ruling that Avocato's survival action for Diecidue's injuries resulting from the alleged malpractice of Maison De'Ville has prescribed.
Like Giroir, we find that no essential purpose of the prescriptive statute is violated by permitting the relation back of the post prescription request to designate or change Ordoyne's capacity in filing the request for a medical panel review of the alleged malpractice committed by Maison De'Ville. Instead of filing the request for review herself, without designation of her capacity to do so, on behalf of Diecidue, who was deceased, she was filing it, after appointment as executrix of the Diecidue succession, as the mandatary of Avocato, Diecidue's sister and heir. Clearly these are closely related claimants. Whether acting on behalf of Diecidue, and/or his estate, Avocato, or, as stated by Justice Marcus in concurring in Giroir, without capacity to sue, Ordoyne's request, to have the alleged negligent care of Diecidue by Maison De'Ville reviewed, was clear and constant. The designation or change in Ordoyne's capacity to request review effected no change in the claim.
The claims against Maison De'Ville remained exactly the same, arising out of the same conduct, transaction, or occurrence set forth in the original letter. Through the original letter, Maison De'Ville knew that allegations of malpractice were being brought against it in relation to the care and treatment, or lack thereof, of Diecidue, whether by his estate or the person designated in La. C.C. art. 2315.1. They were put on notice that the evidence concerning the matter should be collected and preserved. Despite its argument to the contrary, we find Maison De'Ville has not been prejudiced by the delay in designating or changing Ordoyne's capacity. Since Ordoyne's capacity to request review had *492 not been challenged, Maison De'Ville had no legal reason to conclude the claim was invalid.[1] The purpose of prescriptive statutes as set out in Giroir, "to protect him [the defendant] against lack of notification of a formal claim within the prescriptive period," is satisfied in this case. Moreover, we find the reasoning of Giroir even more persuasive here where we are not dealing with the filing of suit, but only with a letter to the Division of Administration requesting a medical review panel, with minimal procedural rules applicable to form or substance.
Accordingly, we find that the trial court erred in finding "that all of Rita Avocato's survival action claims concerning Anthony Diecidue, Jr. have prescribed." We reverse the judgment and remand the matter for further proceedings consistent with the views expressed herein.
REVERSED.
NOTES
[1] Ordoyne could have had the Power of Attorney from Avocato or Cherrier.